Henry BROOKINS, Plaintiff,

v.

Allen T. BONNELL, Individually and in his capacity as President of the Community College of Philadelphia, et al., Defendants.

Civ. A. No. 73-743.

United States District Court,
E. D. Pennsylvania.
April 16, 1973.

Stephen F. Gold, Community Legal Services, Philadelphia, Pa., for plaintiff.

Nochem S. Winnet, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Plaintiff, a first year nursing student at the Community College of Philadelphia (Community College), brings this civil rights action asserting that he has been arbitrarily and capriciously expelled from the Community College's Nursing School without being afforded proper notice and an evidentiary hearing prior to his expulsion in violation of his Fourteenth Amendment due process rights. Plaintiff seeks a preliminary injunction for immediate reinstatement as a student in the Community College's Department of Nursing pending a due process hearing. Tutorial assistance for the education lost during the time plaintiff was denied enrollment is also sought.

Defendants assert that the plaintiff was mandatorily withdrawn because he (1) failed to submit a State required physical examination report; (2) failed to inform defendants that he attended as a student the Hahnemann Hospital School of Nursing and failed to submit a transcript of his records at Hahnemann; (3) failed to attend class regularly. Defendants contend that the foregoing constitute failures in academic standards rather than disciplinary misconduct and, therefore, do not entitle plaintiff to a due process hearing prior to expulsion. Defendants also contend that court interference will create havoc in the administration of the Community College.

Plaintiff alleges that he submitted a physical examination report to the secretary of defendant Pyano at the college office, but that it was apparently mislaid or lost. He asserts that he interpreted the Community College application forms as not requiring notice of his Hahnemann Hospital nursing experience, and finally that he missed only three class days in each of his three subjects, which was within permissible limits. Furthermore, because he was dismissed without prior notice of any charge and without a hearing in which he could fully present his contentions, plaintiff alleges violation of his "due process" rights afforded under 42 U.S.C. § 1983 and the Fourteenth Amendment. In support of his motion for a preliminary injunction, plaintiff contends that there is a substantial likelihood that he will prevail at trial and that he will suffer irreparable harm by losing at least an entire year of nursing as a student and professional worker, if not reinstated without delay.

At the hearing on the motion for a preliminary injunction, held on April 4, 1973, the following facts were developed.[1]

In April 1972, the Nursing Department of Community College accepted plaintiff for its Fall semester, 1972. In compliance with the rules of the Pennsylvania Board of Nurse Examiners, the Nursing Department of Community College require prospective nursing students to file medical examinations before registering for its nursing courses. (P-7). The Nursing Department is obligated by State regulations to keep such records on permanent file. Plaintiff was aware of this requirement; he had received a Community College letter stating that the health forms should be filed by July 5. Plaintiff testified that he obtained and submitted his physical examination reports to defendant Pyano's secretary on August 24, before the start of the Fall semester. (Although this was beyond the required filing date, apparently filing before commencement of the school term would have been satisfactory). In October, the Nursing Department informed plaintiff that his health records were missing or incomplete. Plaintiff discussed the matter with Pyano's secretary who said that

---

1. These findings are based on notes without benefit of a transcribed record.

she would look for the records, and report back to him. She never contacted plaintiff on the matter. He did, however, have a further discussion with defendant Pyano who insisted that the Department had to maintain on file a medical examination report on all students, and he would have to supply one. He told her that he lacked money for another physical examination and for this reason would not be able to comply with this requirement until the first week of the second semester. There is no indication that Miss Pyano advised plaintiff that this would not be satisfactory. The health record was submitted on March 9, 1973, the second day of the second semester. Neither Miss Pyano, who was ill, nor Miss Pyano's secretary testified at the preliminary injunction hearing, so that it is unknown whether there may be a factual dispute as to the medical reports.

Dr. Harvey Oates, Director of the Nursing Department, testified that he had discussions with Dr. Hale Cook, the physician indicated as having conducted plaintiff's physical examination. Although Dr. Cook could not initially confirm the facts surrounding plaintiff's health records, he later told Dr. Oates that the tests he administered were as reported on the physical examination report submitted on March 9, 1973. Dr. Cook also stated to Dr. Oates that the plaintiff had been to see him on June 22 and July 12. (P–11).

Plaintiff failed to note on his Community College application that he attended the Hahnemann School of Nursing. (D–1). He also failed to submit to Community College a transcript of his work at Hahnemann. At the hearing, plaintiff stated that he interpreted the application's instructions as referring only to prior college or university enrollment. Since he did not consider Hahnemann School of Nursing to be a college or university, he did not list it on his Community College application or sub-

mit a Hahnemann transcript. After he was informed that a transcript must be submitted, he requested Hahnemann to do so, and it eventually was submitted; the record is unclear as to when these events occurred.

The testimony of Dr. Oates and the plaintiff was in conflict with respect to plaintiff's class absences. Dr. Oates stated that he was informed by school personnel that plaintiff failed to attend classes regularly. Plaintiff stated he missed occasional classes, approximately three each in Nursing, Biology and Psychology. There is no evidence that these would constitute excessive absences. The problem here is that Community College normally does not retain class attendance records, nor does there appear to be any firm policy as to the number of permitted absences. The only attendance record available was that of plaintiff's Biology class, which indicated that plaintiff had absented himself from class "*thrice*", and a further notation that such was "well within the allowable" number of absences. (P–13).

On January 22, 1973, Miss Pyano and other faculty members convened a Special Planning Meeting to review plaintiff's record. Plaintiff was then on disciplinary probation for threatening Mr. Massey, one of the faculty members present. Plaintiff also had received an initial unsatisfactory clinical evaluation.[2] After discussing plaintiff's clinical experience, it was decided that it would be premature to declare plaintiff unsatisfactory since he still had two weeks of the clinical course remaining. Plaintiff then entered the meeting and discussed with the faculty members his clinical experience, the threat against Mr. Massey (for which he apologized) and the alleged withholding of information. The faculty made no conclusions or evaluations on the latter two matters but did state that they thought the matters involved administrative decisions. (P–

2. Clinical evaluation is a review of the student's performance in executing nurs-

ing duties under actual hospital conditions.

14). Plaintiff's final clinical evaluation was satisfactory.

On February 26, 1973, defendant Pyano sent a letter to plaintiff informing him that he must withdraw from the Nursing curriculum at Community College. The reasons expressed in the letter for the mandatory withdrawal were plaintiff's failure to provide the Community College with his physical examination records and a transcript from Hahnemann School of Nursing, and plaintiff's failure to attend classes regularly. These reasons were articulated by Dr. Oates to defendant Pyano in a memorandum dated February 16, 1973. (P–10).

Plaintiff did not receive any notice of impending withdrawal prior to the receipt of the February 26, 1973 letter. Following the letter, plaintiff had meetings with the Provost, Assistant Provost, defendant Pyano and Dr. Oates. However, it does not appear that he was afforded any sort of an impartial hearing.

## DISCUSSION

■ To obtain a preliminary injunction, a moving party must establish:

(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo. (Cit. omitted).

A. L. K. Corporation v. Columbia Pictures Industries, Inc., 440 F.2d 761, 763 (3rd Cir. 1971). The probability of plaintiff's eventual success depends solely upon his right to a "due process" hearing prior to expulsion. If plaintiff was dismissed because of disciplinary misconduct, he is entitled to a due process hearing. If he was dismissed solely because of an academic failure, he is not entitled to a hearing. Unfortunately, plaintiff does fit neatly into either of the foregoing categories.

The cases are legion holding that a student must be given notice and an opportunity for a hearing before being expelled from a tax supported college or university for disciplinary reasons. Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969), cert. denied, 398 U.S. 965, 90 S.Ct. 2169, 26 L. Ed.2d 548 (1970); Wasson v. Trowbridge, 382 F.2d 807 (2nd Cir. 1967); Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed. 2d 193 (1961); Jones v. State Board of Education of and for State of Tennessee, 279 F.Supp. 190 (M.D.Tenn.1968), aff'd 407 F.2d 834 (6th Cir. 1969); Knight v. State Board of Education, 200 F.Supp. 174 (M.D.Tenn.1961). In determining the specific procedures due process requires

the court must carefully determine and balance the nature of the private interest affected and of the government interest involved, taking account of history and the precise circumstances surrounding the case at hand.

Wasson v. Trowbridge, *supra*, 382 F.2d at 811. In the landmark case of Dixon v. Alabama State Board of Education, *supra*, students were expelled apparently for engaging in lunch-counter demonstrations. The court held that "the rudiments of an adversary proceeding must be afforded." *Id*. 294 F.2d at 159.

■ On the other hand, it is also established that "due process" does not require notice and a hearing for a student expelled for scholastic failure. Connelly v. University of Vermont and State Agr. Col., 244 F.Supp. 156 (D.Vt.1965); Barnard v. Inhabitants of Shelburne, 216 Mass. 19, 102 N.E. 1095 (1913). The courts will not intrude into the domain of academic standards where school, not judicial, officials are those properly qualified to execute judgment. However, the courts are not totally precluded from examining scholastic dismissals. If the student was actually expelled for reasons other than the quality of his work or if the student failed because of bad faith or arbitrary and capricious action by an instructor, the courts will order the granting of a fair and impartial hearing. *Connelly, supra*.

The issue is the characterization of plaintiff's alleged failures. The present record does not indicate that plaintiff was dismissed because of academic deficiencies. His first semester grades at Community College were B, C, and Incomplete which was later made up. Although the Community College catalogue allows dismissal of a nursing student "not suited for Nursing, in the opinion of the Nursing faculty and the Head of the Department," (P–7), the faculty never rendered an opinion concerning plaintiff's suitability for nursing. (P–14). Indeed, the stated reasons for plaintiff's dismissal appear to be primarily his nonconformance with school regulations.

This case is not the traditional disciplinary situation where ·a student violates the law or a school regulation by actively engaging in prohibited activities. Plaintiff has allegedly failed to act and comply with school regulations for admission and class attendance by passively ignoring these regulations. These alleged failures do not constitute misconduct in the sense that plaintiff is subject to disciplinary procedures. They do constitute misconduct in the sense that plaintiff was required to do something. Plaintiff contends that he did comply with the requirements. Like the traditional disciplinary case, the determination of whether plaintiff did or did not comply with the school regulations is a question of fact. Most importantly, in determining this factual question, reference is not made to a standard of achievement in an esoteric academic field. Scholastic standards are not in-' volved, but rather disputed facts concerning whether plaintiff did or did not comply with certain school regulations. These issues adapt themselves readily to determination by a fair and impartial "due process" hearing.

I am reluctant to interfere in the internal affairs of any educational institution. In recent years there has been a rapid expansion in the rights afforded to students in publicly supported schools and colleges prior to dismissal. This is as it should be because

expulsion from an institution of higher learning, or suspension for a period of time substantial enough to prevent one from obtaining academic credit for a particular term, may well be, and often is in fact, a more severe sanction than a monetary fine or a relatively brief confinement imposed by a court in a criminal proceeding. Soglin v. Kauffman, 295 F.Supp. 978, 988 (W.D.Wis.), aff'd 418 F.2d 163 (7th Cir. 1969).

Most educational institutions have strived in good faith to keep abreast of the changing law. The recently adopted, but not yet fully implemented, grievance, hearing and appeals procedures of the Community College demonstrate its desire to comply with the spirit and letter of the law. This, however, affords no aid to plaintiff.

Underlying the present controversy appears to be defendants' sincere convictions that the dismissal of plaintiff was for completely proper reasons, and that it would be a waste of time and effort to hold a hearing. Plaintiff, however, contends to the contrary and it is precisely for this reason that final determination of the disputed, or at least unclear facts, cries out for a ·fair and impartial hearing. Only in the event that it was completely clear that the Community College had proper reasons to dismiss plaintiff from school, and plaintiff agreed that such was the situation, would a hearing necessarily prove to be an exercise in futility.

Counsel for plaintiff tacitly agrees that if the presently adopted hearing procedures were made retroactively effective as to plaintiff, a hearing conducted in accordance with such procedures would meet "due process" requirements. The College contends that these procedures are inapplicable to an administrative expulsion for failure to comply with mandated entrance requirements. It may well be that a potential student enrollee in a publicly funded educational institution has no constitutional or "civil right" to a "due process" hearing to prove his qualifications and right to ad-

mission. Once a student has been formally admitted and satisfactorily completed a full semester of classes, justice would seem to require that the student be afforded a fair opportunity to establish that he had fully met the entrance requirements, or, if not, that there existed countervailing considerations (such as some fault on the part of the College) that would preclude dismissal.

 At this stage of the proceedings, it appears probable that plaintiff, eventually after final hearing, will be entitled to some of the relief sought; namely, a "due process" hearing to determine whether he should be discharged. Whether or not plaintiff is entitled ultimately to reinstatement is not the issue for the court at this time. If the discharge without a proper hearing was violative of the Fourteenth Amendment, he should presently be attending classes until and unless a "due process" hearing is conducted and the issues determined adversely to plaintiff. Conversely, however, to presently permit his re-entry with the prospect of dismissal as soon as a hearing is held might well tend to disrupt the smooth operation of the Community College. Therefore, it is appropriate to condition any order directing reinstatement upon a reasonable prior opportunity to hold a hearing. This will be done.

I will not specify the procedures to be adopted for such a hearing. The College may be able to adopt its present procedures, or it may prefer to set up some special procedure. It is to be suggested that since this matter appears to be *sui generis* and unlikely to re-occur, the stricter the formalities to be observed, the less likely there would be a successful attack on the proceedings for lack of "due process."

The order that will be entered preliminarily will not mandate that the College hold any hearing. The College may, if it so decides, await the order of court after a final hearing. However, because of the irreparable harm occurring to plaintiff if he has been wrongfully dis-

charged, and to maintain as nearly as possible the *status quo ante,* I will order that he be fully reinstated as a student unless afforded a "due process" hearing within ten days.

 Plaintiff, who is indigent will be required to post no bond, since no harm will result to defendants if this order is later vacated or determined to have been improvidently entered. *See* Continental Oil Co. v. Frontier Refining Co., 338 F. 2d 780 (10th Cir. 1964); Bass v. Richardson, 338 F.Supp. 478 (S.D.N.Y.1971); Hunter v. City of Ann Arbor, 325 F. Supp. 847 (E.D.Mich.1971); Powelton Civic Home Owners Ass'n v. Dep't of Housing and Urban Development, 284 F.Supp. 809 (E.D.Pa.1968).

Nothing in the order is to be construed as prohibiting the defendants from requiring plaintiff to comply with all rules and regulations of the Community College and its Department of Nursing in regard to discipline, academic standing, or any other matters to the same extent as they are applicable to other students.