**UNITED STATES of America,
Appellant,**

v.

**1,557.28 ACRES OF LAND IN OSAGE COUNTY, KANSAS; and Wilbur C. Lewis et al., Appellees.**

No. 73–1334.

United States Court of Appeals,
Tenth Circuit.

Oct. 29, 1973.

446

Terrence L. O'Brien, Atty., Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., Robert J. Roth, U. S. Atty., Roger K. Weatherby, Asst. U. S. Atty., and Carl Strass, Atty., Dept. of Justice, with him on the brief), for appellant.

John R. Hamilton, Topeka, Kan. (Ward D. Martin, Arthur L. Claussen, Donald D. Barry, John C. Frieden, and Wesley A. Weathers, of Crane, Martin, Claussen, Hamilton & Barry, Topeka, Kan., with him on the brief), for appellees, Russell L. Booth and Elsie M. Booth.

Before PHILLIPS, SETH and Mc-WILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is a condemnation action. The United States appeals from the judgment and order of the United States District Court for the District of Kansas awarding compensation to appellees, Russell L. Booth and Elsie M. Booth, in the amount of $272,350.00 for farm land taken for a reservoir project. A representative of the Corps of Engineers negotiated an offer of sale which the Government sought to use to establish the value of the land. The District Court voided the offer executed by appellees because of fraudulent misrepresentations made to them by agents of the Corps of Engineers which induced appellees to make the offer.

The material facts are these: Some time during the fall of 1969 the Booths were contacted by an appraiser for the Corps of Engineers, who advised them that their property would be taken for the project, and he suggested to the Booths that it would be to their advantage to negotiate a sale with the Government rather than litigate the amount of compensation. Some months later the Booths were again contacted, this time by Mr. Walter Kibler, a negotiator for the Corps of Engineers. In the interim they had contracted to purchase farm land to replace that being taken by the Government, and obligated themselves for substantial installment payments thereon due in March and June 1970.

Negotiations ensued between Mr. Kibler and the Booths. Mr. Kibler, in order to demonstrate his fairness and integrity to the Booths, related an incident in which he had offered an elderly couple more than their asking price for other

lands acquired by the Corps. He then made an initial offer of $207,000.00 which the Booths rejected. The offer was raised to $230,500.00 which the Booths were willing to accept provided that they could be guaranteed payment within sixty days. Mr. Booth asked that a provision to that effect be included in the offer. He was advised by Mr. Kibler, however, that such a provision would be unnecessary, and that the Booths could expect payment within four to six weeks and in no case later than sixty days. The Booths then executed a form instrument captioned "Department of the Army Offer to Sell Real Property." Neither Mr. nor Mrs. Booth read the instrument carefully, but apparently relied on Mr. Kibler's representations as to its content. As is customary, the offer also provided that the consideration stated therein would be the full amount of just compensation should the United States elect to take the land by condemnation. The terms of the offer allowed the United States six months in which to accept it.

Approximately thirty-five days after executing the offer, the Booths were notified that the United States had accepted it, but that the Booths would have to obtain certain quitclaim deeds as well as a release of a rock and gravel lease in order to clear title. The Booths succeeded in obtaining the quitclaim deeds but were unable to procure the release from the lessee. As a result the sale was not completed within the sixty day period, and the United States initiated condemnation proceedings.

There was a hearing on the motion of the United States for summary judgment based on the offer as establishing just compensation for condemnation purposes at the offer price. The District Court held the offer instrument null and void because of the fraudulent representations by Mr. Kibler relating to the sixty day payment period, and the reliance by the Booths thereon.

At the outset we note that because the case involves a transaction to which the United States is a party, and arising from a governmental function, the validity, meaning, and effect of the offer instrument executed by the Booths are controlled by the laws of the United States. S.R.A., Inc. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851; United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838. See also 1A Moore's Federal Practice, ¶¶ 0.321, 0.323[7]. There is however little difference in the elements of fraud as applied in the different courts. There are many descriptions of the essential elements of actionable fraud that can be found in opinions of the federal courts. Our decision in Pacific Royalty Co. v. Williams, 227 F.2d 49 (10th Cir.), considered the elements without reference to the rule of the state where the action originated. We there said: "The essential elements of actionable fraud are a false representation of a material fact, knowledge of its falsity when made, intent to deceive, and reliance thereon with resulting damages." The burden of proving fraud is of course on the party alleging it. Koscove v. Comm'r of Internal Revenue, 225 F.2d 85 (10th Cir.). Where à party can show that he has been fraudulently induced to enter into a transaction, he may then void that transaction. Restatement, Contracts, § 476.

The record before us provides ample evidence that appellees sustained their burden of proof, and there is adequate evidence as a basis for the finding of fraud by the trial court. At the hearing the United States produced no witnesses of its own nor did it contest the evidence and testimony presented by the Booths. The facts show that the Booths were not represented by counsel during the negotiations with Mr. Kibler; that they indicated to him that the purchase price would be adequate only if they could be assured of payment within sixty days; that they asked that a provision to that effect be included in the offer, and that they proceeded with the

transaction only on Mr. Kibler's assurances that in no case would payment be later than sixty days. At the time of the transaction, the Booths had already obligated themselves to purchase replacement land and would soon be facing substantial installment payments. Such circumstances readily suggest a willingness to accept a lower price in return for immediate payment. Furthermore, Mr. Kibler was an experienced negotiator of Government land purchases. He was familiar with the instrument signed by the Booths and with the procedures normally followed in such transactions. The District Court was justified in determining that Mr. Kibler knew his unconditional assurance of the sixty day payment period was false and contrary to the terms of the offer instrument.

■■■ The United States argues that the sixty day payment assurance was a mere statement of opinion or at best a promise of future action, and in neither case could it be the basis for a finding of fraud. We recognize that traditionally statements of mere opinion cannot form the basis of a fraud. Neither can promises of future action, unless made with the present intent not to perform. Restatement, Contracts, §§ 473, 474. However, neither characterization accurately describes the representation with which we are concerned. The Booths had made it clear that the price stated in the offer would be acceptable only if they were paid within sixty days. They asked that the offer reflect that condition, and signed it only because Mr. Kibler insisted that in no case would payment be later than that. Mr. Kibler did not say that payment would ordinarily be within that time or that the Government would attempt to complete the transaction within sixty days. Rather his statement assumed the character of a warranty; he guaranteed the exact condition upon which the Booths would agree to make the offer. This is not to say that at the time he made the offer Mr. Kibler knew the United States would not pay within sixty days. We do say, however, that in view of the six

month period stated in the offer itself, and in view of Mr. Kibler's knowledge of the course followed by other Government land purchases, such an assertion could not have been made without knowledge that it was contingent on circumstances beyond Mr. Kibler's control. See Restatement, Contracts, § 473, Illustration 3.

■■■ Considering the importance of the sixty day period to the Booths, the assertion is a misrepresentation of the very basis of the transaction. See Restatement, Contracts, § 475. In any event we hold that where, as here, an unconditional promise is made as an inducement to enter a contract, and the promisor is without knowledge as to his ability to perform, or knows or should know of his prospective inability to perform, such a promise constitutes an actionable misrepresentation. Entron, Inc. v. General Cablevision of Palatka, 435 F.2d 995 (5th Cir.).

■■■ The United States also contends that any representations by Mr. Kibler as to the payment period should be ignored in view of the provision in the offer itself allowing the United States six months in which to accept. Whether this contention be based on the parol evidence rule or on the supposed negligence of the Booths in failing to read the instrument themselves, we feel it is without merit. Parol evidence contradicting the terms of a contract is always admissible to show that the contract was procured by fraudulent inducement. Investors Preferred Life Ins. Co. v. Abraham, 375 F.2d 291 (10th Cir.); Globe Steel Abrasive Co. v. National Metal Abrasive Co., 101 F.2d 489 (6th Cir.). Circumstances here suggest an even more convincing reason to excuse the provisions in the offer. We have noted Mr. Kibler's experience in negotiating Government land purchases and his familiarity with the procedures involved. After demonstrating his fairness and honesty to the Booths he induced them to execute their offer on the standard form provided by the Government. Mr. Kibler was obviously well

versed in the content and effect of the form. In such a situation it would be only natural for the Booths to sign the instrument, relying on Mr. Kibler's representations as to its effect rather than their own reading and interpretation of it. We therefore hold that the Booths are not bound by any written provisions of the offer contradicting Mr. Kibler's oral assurances. Shook v. Puritan Mfg. Co., 75 Kan. 301, 89 P. 653; Clinch Valley Coal & Iron Co. v. Willing, 180 Pa. 165, 36 A. 737. See also Cox v. Pabst Brewing Co., 128 F.2d 468 (10th Cir.), recognizing the principle but finding no fraud from the facts.

In concluding we note that we are dealing with an instrument which in effect bound only one party, the Booths. It was executed on a form provided by the offeree, its execution was induced by the offeree's assurances as to its effect. The record indicates no injury to the offeree occasioned by any reliance on the terms of the instrument.

Judgment affirmed.