Henry L. MARTIN, Plaintiff-Appellant,

v.

Orrin L. HELSTAD, Gerald J. Thain and
Joseph R. Thome,
Defendants-Appellees.

No. 81-2488.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 16, 1982.

Decided Feb. 2, 1983.

Michael E. Rigney, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Charles D. Hoornstra, Dept. of Justice, Madison, Wis., for defendants-appellees.

Before CUMMINGS, Chief Judge, and CUDAHY and COFFEY, Circuit Judges.

CUMMINGS, Chief Judge.

Henry L. Martin appeals from an interlocutory order of the district court denying his motion for a preliminary injunction enjoining the University of Wisconsin Law School (hereinafter "Law School") from interfering with his registration at the Law School pending resolution of the merits of his due process claim. Jurisdiction is based on 28 U.S.C. 1292(a)(1). We affirm on the ground that injunctive relief is not warranted because the appellant has not satisfied any of the factors justifying the grant of a preliminary injunction.

## I.

In December 1980 the appellant applied for admission to the Law School for the August 1981 term. Question 6(b) of the application for admission asks *inter alia* if the applicant had ever been convicted of criminal conduct. The appellant answered "yes" to question 6(b). If an applicant answers "yes" to Question 6(b), the application requests a full explanation. The appellant responded "I am a former legal offender. I received a full pardon in 1971 from former Wisconsin Governor Patrick J. Lucey. This pardon is on file in the Secretary of State's office." The appellant was notified of his acceptance to the Law School on March 5, 1981, and accepted the offer of admission on April 10, 1981.

On July 21, 1981, the appellant's case manager informed the Law School that appellant was then incarcerated in a federal prison in Milan, Michigan, serving a ten-year sentence for interstate transportation of forged securities. Appellee Thome and the appellant spoke by phone[1] on July 22, 1981, and Thome told him "that the federal conviction and his failure to disclose it affected his admission to the Law School." Thome directed the appellant to send the Law School "official information regarding this conviction." The appellant asserts that Thome directed him to write a letter explaining the circumstance behind his conviction and incarceration. The appellant responded with a letter attempting to explain why he did not "mention or detail" his federal conviction.

On July 24, 1981, the Law School notified the appellant by letter that it was reconsidering his application "[b]ecause of your failure to disclose material facts as requested." The letter specifically stated that a misrepresentation constituted grounds for rescinding the appellant's admission. The letter concluded:

> Before taking this step, however, we will review the materials you are now in the process of sending us. Of particular importance is a full explanation of your present conviction and incarceration and

the reasons why you failed to disclose this information to us.

The appellant's letter to the Law School, however, was mailed prior to his receipt of the letter from the Law School to him. The appellant did not communicate again with the Law School after July 22, 1981. On August 4, 1981, the Law School revoked the appellant's admission to the Law School on the grounds that the appellant's application had failed to disclose his federal conviction and that his conversation with appellee Thome on July 22, 1981 and subsequent letter to the Law School implied that his federal conviction was about to be vacated. In fact his conviction had already been upheld on direct appeal and the appellant was challenging his conviction in a collateral action raising many of the same issues that had been decided on direct appeal.

The appellant filed this action on August 17, 1981, asking for declaratory and preliminary and permanent injunctive relief prohibiting the defendant-appellees from interfering with his registration at the Law School. The appellant claims the denial of procedural due process rights in that the Law School revoked his admission without notice or hearing and pursuant to vague or nonexistent standards. A hearing was held on the appellant's request for a preliminary injunction on August 26, 1981. The district court found that the appellant did have a property interest in his admission to the Law School based on the Law School's offer of admission and his acceptance of that offer. The district court went on to find, however, that the appellant had received all the process he was due. The appellant was allowed to respond to the threatened rescission by letter, affidavits and other documents. The district court held that because of the question presented—whether or not the appellant had failed to disclose his federal conviction—an opportunity to be heard by letter, affidavit or other documentary material was sufficient. An order denying the appellant's motion for a preliminary injunction was filed on August 27, 1981, and

---

1. The parties disagree as to who called whom.    Tr. at 8–9.

the appellant filed a timely notice of appeal.[2]

## II.

This court will not reverse a grant or denial of a preliminary injunction absent a clear abuse of the district court's discretion. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 613 (7th Cir.1982). Furthermore, the deference accorded that discretion is enhanced when the decision is one, such as the decision here, which preserves the status quo. *United Church of the Medical Center v. Medical Center Commission*, 689 F.2d 693 at 698 (7th Cir.1982). Four factors enter into the district court's exercise of discretion to grant or deny a preliminary injunction: (1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; (3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and (4) whether the granting of a preliminary injunction will disserve the public interest. *Atari, supra,* at 613. The district court concluded only that the plaintiff failed to meet the threshold requirement of showing likelihood of success on the merits, and did not address the other factors denying the appellant's motion. *Kolz v. Board of Education of City of Chicago*, 576 F.2d 747, 749 (7th Cir.1978).

The merits of this case involve two issues: whether the appellant has a property interest in his law school admission, and if so, what process is due him before that admission can be revoked. Although we have some reservations about the district court's resolution of both of these issues, we do not find the abuse of discretion necessary to reverse the district court's decision.

### A.

As noted above, the district court held that the appellant had a property interest in his admission to law school. The property interest arose, according to the district court, out of the Law School's offer of admission and the appellant's acceptance of that offer.

Generally, property interests are not created by the Constitution but are created and defined by existing rules—such as state laws[3]—or "mutually explicit under-

2. At the outset, we reject appellee's contention that this case is moot because the relief requested was admission to the class entering the Law School in September 1981 and that is now impossible. We believe that the appellant's request for "such other and further relief as the court deems to be appropriate ..." would include enjoining the Law School from interfering with the appellant's registration in a later class. 28 U.S.C. § 2202 (in an action for declaratory judgment, court may grant any further necessary and proper relief). *Crane Co. v. American Standard, Inc.*, 490 F.2d 332, 340 (2d Cir.1973).

At oral argument counsel for the appellant notified the Court that the appellant has been accepted by the law school of the University of California at Berkeley and has begun his first year of studies. The appellant maintains that this appeal is not moot even though the appellant no longer desires immediate admission to the University of Wisconsin Law School; the appellant continues to demand a hearing before the Law School concerning the revocation of his admission, and claims that the University of Wisconsin Law School's continuing denial of a hearing comporting with due process amounts

to a constitutional violation warranting immediate injunctive relief. Counsel for the appellant represented that he could not say that appellant would not transfer to the University of Wisconsin if he were admitted to the Law School. Therefore, the case cannot be deemed moot.

3. It is clear that the appellant can have no property interest under Wisconsin law. Wis. Stat. § 36.05(11) (1979) defines a student as a person who is "registered for study." For that reason, *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975) (on the basis of state law, appellees plainly had legitimate claims of entitlement to a public education) is inapposite to the case at hand. Further, all of the cited cases and cases uncovered in our research that discuss a student's property interest in his or her education acknowledge a property interest only in *continuing* the education. *Betts v. Board of Education of City of Chicago*, 466 F.2d 629, 633 (7th Cir.1972); *Hagopian v. Knowlton*, 470 F.2d 201, 209 (2d Cir. 1972); *Dixon v. Alabama State Board of Education*, 294 F.2d 150, 157 (5th Cir.), certiorari denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d

standings" that support a person's claim to entitlement to the benefit and that he may invoke at a hearing. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

We express one concern with respect to the district court's finding that the Law School's offer and the appellant's acceptance created a property interest in favor of the appellant. The concern is whether a mutually explicit understanding based on an offer and acceptance can exist when the offer is allegedly procured by the applicant's fraud. *See Jago v. Van Curen,* 454 U.S. 14, 23, 102 S.Ct. 31, 36, 70 L.Ed.2d 13 (1981) (Blackmun, J., concurring) ("I could also hold that no mutual expectations existed under the circumstances inasmuch as the parole board's order was based on respondent's untruths; respondent could not reasonably believe that there was a legitimate mutual understanding that he would be released.")[4] To hold that the applicant's fraud prevents a property interest from arising out of the transaction, however, creates another problem: if no property interest in an admission to the Law School arises when the applicant lies on the application, and if the Law School can decide whether or not the applicant lied without granting the applicant a hearing, then the Law School could deny an applicant a hearing merely by saying the applicant lied.

Because the issues have not been sufficiently developed to permit us to rule une-quivocally on the existence of the appellant's property interest in his law school admission, we shall, for purposes of this opinion only, assume that such a property interest exists. *Board of Curators, University of Missouri v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 952, 55 L.Ed.2d 124 (1978) (Court assumes the existence of a liberty or property interest but concludes appellant has not been deprived of due process). We turn next to the question of whether the appellant was denied due process when his admission was revoked.[5]

### B.

The district court held that the appellant had received all the process he was due when he received the opportunity to submit written materials to the Law School prior to its reconsideration of his admission. The court's holding was based upon its finding concerning the weight of the property interest the appellant had at that point in attending the Law School and based upon the precise nature of the issue presented: whether the appellant failed to disclose his federal conviction. Again, we cannot find that the district court abused its discretion in reaching that conclusion.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) sets out the factors to be considered in identifying the specific dictates of due process: (1) the private interest affected, (2) the risk of an erroneous deprivation through the procedure used and the probable value of substitute procedures, and (3) the government's

193 (1961) (precise nature of the private interests involved is the right to *remain* at a public institution of higher learning in which the plaintiffs were students in good standing); *Zitser v. Walsh,* 352 F.Supp. 438, 443 (D.Conn. 1972) (the fact that plaintiff had accepted the National Guard's offer to attend officer candidate school *and had entered into that program* created an interest deserving of some measure of due process protection). See *Brookins v. Bonnell,* 362 F.Supp. 379, 383–84 (E.D.Pa.1973) ("It may well be that a potential student enrollee in a publicly funded educational institution has no constitutional or 'civil right' to a 'due process' hearing to prove his qualifications and right to admission.").

4. While appellant is correct that *Jago* concerns a liberty interest, the point raised by Justice Blackmun deals specifically with the "mutually explicit understandings" upon which the appellant's claim is based.

5. Appellee's argument based in Wisconsin contract law is irrelevant. The question is not whether the Law School's offer and the appellant's acceptance gives rise to an enforceable contract. The appellant at least implicitly concedes that the Law School does have the power to revoke his admission. Nor is this the question whether the appellant has clean hands, but whether the Law School is required to give the appellant a hearing before deciding his hands are not clean.

interest. We agree with the district court that prior to beginning classes, the appellant's interest in his law school admission is not entitled to great weight. *Cf. Brookins v. Bonnell,* 362 F.Supp. 379, 383–84 (E.D.Pa. 1973) (potential enrollee may have no right to due process hearing to prove his right to admission).

With respect to the second factor, the risk inherent in the procedure used, we first note that deprivations of a property interest without opportunity for an oral personal exchange are generally disfavored. *Gray Panthers v. Schweiker,* 652 F.2d 146, 160–61 (D.C.Cir.1980). There are two exceptions to this rule, however, both of which are at least potentially applicable to the case at hand. First, academic dismissals, as opposed to disciplinary dismissals, require no hearing at all. *Board of Curators, University of Missouri v. Horowitz,* 435 U.S. 78, 87–91, 98 S.Ct. 948, 953–955, 55 L.Ed.2d 124 (1978); *Woodard v. Marsh,* 658 F.2d 989, 998 (5th Cir.1981), certiorari denied, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982); *Miller v. Hamline University School of Law,* 601 F.2d 970, 972 (8th Cir.1979). The deference accorded academic dismissals is based on the policy of fostering academic freedom at the university level. *Regents of the University of California v. Bakke,* 438 U.S. 265, 311–15, 98 S.Ct. 2733, 2759–2761, 57 L.Ed.2d 750 (1978) (Powell, J.). This policy is of greater importance in the case of admissions. *Id.* at 312, 98 S.Ct. at 2759; Friendly, *Some Kind of Hearing,* 123 U.Pa. L.Rev. 1267, 1305 (1975). To the extent that the Law School's reconsideration of the appellant's acceptance to the Law School represented a reconsideration of his suitability as a law student and potential lawyer, then the revocation of his acceptance can be analogized more closely to an academic than it can to a disciplinary dismissal.

The second situation in which an oral personal appearance may not be required is in the situation that arose in *El-*

dridge. When the issue is "sharply focused and easily documented," then an oral hearing is unnecessary. *Eldridge, supra* 424 U.S. at 343, 96 S.Ct. at 907; *Mattern v. Matthews,* 582 F.2d 248, 256 (3d Cir.1978), certiorari denied *sub nom. Califano v. Mattern,* 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979). The district court in this case decided this issue on the authority of *Eldridge.* Two problems disturb us. First, *Eldridge* did provide for a full post-deprivation hearing, the Law School here does not. Second, the issue of whether or not the appellant failed to disclose his federal conviction on his law school application is shading very close to the issue of the applicant's credibility and veracity. And where credibility is in issue, an oral hearing is required. *Mathews v. Eldridge, supra,* 424 U.S. at 343–44, 96 S.Ct. at 906–907, *citing Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). Nevertheless, because our review at this stage is limited, because the district court could reasonably characterize the issue so as to make an oral hearing unnecessary, because the reconsideration by the Law School was colorably an academic dismissal, and because denial of an injunction merely preserves the status quo in this case, we hold that the district court did not abuse its discretion in deciding that the appellant had received all the process that is due and that a preliminary injunction was not warranted.[6]

### III.

Even though the issue of appellant's likely success on the merits is uncertain, we will also briefly consider the other factors that enter into a determination of whether to grant or deny a preliminary injunction. All of these factors weigh against granting a preliminary injunction in this case.

Most importantly, a delay in obtaining admission to a graduate school for purposes of pursuing professional studies, as distin-

---

**6.** We also reject the appellant's argument that the Law School's regulations concerning disclosure are vague. The application itself directs applicants to "state fully" the circumstances of any criminal conviction. *Soglin v. Kauffman,*

418 F.2d 163, 168 (7th Cir.1969) (challenged rule contained "no clues" which could assist a student in determining if action violated rule prohibiting "misconduct").

guished from interruption or termination of attendance already in progress, is not ordinarily considered irreparable injury warranting injunctive relief. *Doe v. New York University,* 666 F.2d 761, 773 (2d Cir.1981). The only circumstance the appellant cites as militating in favor of such relief is his age (39 at the time of the hearing before the district court), which we find insufficient to amount to irreparable harm. *Id.*[7]

The last two factors—whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant and whether the granting of a preliminary injunction will disserve the public interest—may be considered together. The threatened injury to the appellant—delay in beginning his law school career at the University of Wisconsin—pales before the threatened injury to the Law School and the public interest if an unsuitable candidate is admitted to the Law School. Both the Law School's and society's interest in producing honest lawyers is deserving of great protection.

### IV.

For all of the above reasons we affirm the decision of the district court denying appellant's motion for a preliminary injunction.

COFFEY, Circuit Judge, concurring.

While I agree with the majority that the district court's decision denying the plaintiff a preliminary injunction should be affirmed, I am compelled to write separately because I disagree with the district court's finding and this court's assumption that the plaintiff had a constitutionally protected property interest in attending the University of Wisconsin Law School. Rather, contrary to the district court's finding and the majority's assumption, I am convinced that the plaintiff had no constitutionally protected property interest in admission to law school prior to formal enrollment and matriculation, and thus any discussion of the

process afforded the plaintiff is entirely superfluous. My conclusion is based on two separate grounds. First, I would hold that one cannot acquire a property interest on the basis of fraudulent information. Second, I believe that the right of a university to make its own judgments as to the selection of its student body is so vital to the important concept of academic freedom that a mere potential student enrollee such as the plaintiff cannot, prior to formal enrollment and matriculation, acquire a property right in attending a particular university. To fully understand the extent of Martin's misrepresentations relating to his law school application and why no constitutionally protected property interest arose in this case, a thorough recitation of the facts is necessary.

In February of 1978, the plaintiff was convicted in the federal District Court for Oregon of interstate transportation of forged securities and received a sentence of ten years imprisonment. On December 15, 1980, while serving the ten-year sentence, the plaintiff submitted a written application for admission to the University of Wisconsin Law School. The law school application form required applicants to list both their "Present Address (Mailing)" and "Permanent Address." Although Martin was actually incarcerated at this time in the Federal Correctional Institution at Milan, Michigan serving a ten-year sentence, he stated on his law school application that his "Present Address (Mailing)" was in Milwaukee, Wisconsin, rather than the federal prison at Milan, Michigan.

The plaintiff answered question 6(b) of the application as follows:

> "(b) Have you ever been convicted of, pled guilty or no contest to, or forfeited bail for any criminal conduct under law or ordinance, excluding only minor traffic violations?
> Yes.
>
> "If the answer to either 6(a) or (b) is yes, please fully explain the circum-

---

**7.** Because the appellant is now attending law school in California, he can no longer assert that the University of Wisconsin Law School is

continuing generally to delay his legal education.

stances in the space below or attach a supplemental page.

"I am a former legal offender. I received a full pardon in 1971 from former Wisconsin Governor Patrick J. Lucey. This Pardon is on file in the Secretary of State's Office."[1]

Relying upon the incomplete and misleading information contained in the plaintiff's answer to question 6(b), the law school notified Martin on March 5, 1981 of his acceptance, and the plaintiff accepted the offer of admission on April 10, 1981.

On July 21, 1981, the law school administration first learned of Martin's 1978 federal conviction when Cathy Tucker, a Bureau of Prisons Case Manager, contacted the law school to arrange Martin's parole release in order that he might attend the law school orientation program. The following day, July 22, the plaintiff had a telephone conversation with Professor Joseph Thome of the law school regarding the plaintiff's answer to question 6(b) of the application. Also on July 22, the plaintiff wrote an eight-page letter to Thome in which he attempted to explain his response to question 6(b). The letter stated:

"There are several reasons why I did not mention or detail my 1978 conviction for aiding and abetting the interstate transportation of unauthorized securities, in violation of 18 USC Sec. 2314, Par. 3, and Sec. 2. First, the offense for which I was convicted was under appeal and is presently scheduled for hearing on August 12, 1981. I am scheduled to argue the case in propria persona on that date. While it is generally considered improper, if not premature, to discuss the result in a criminal case prior to announcement of the court's formal decision, I believe that sufficient information is available to permit me to advise you that an Order vacating the judgment of conviction will be entered in this matter shortly after August 12, 1981. I can now advise you of the factual basis for the result that is to be reached in this case. First, the specific conduct for which I was convicted *is not* and *never has been* criminal under the laws of the United States or any state. Second, the judge who presided at my trial and who entered the judgment of conviction in this case has subsequently admitted on the official record that he had in fact, committed prejudicial error in deciding my guilt by relying on a state of facts that was not adduced as proof at trial. The subsequent admission of prejudicial error by the trial judge gave the Ninth Circuit Court of Appeals both original and appellate jurisdiction in the matter. This presents some rather unique features inasmuch as the appellate court is exercising concurrent original and appellate jurisdiction. Third, the judgment of conviction in the instant case was clearly erroneous and should not have been entered. I am not guilty of committing any legal offense, either criminal or non-criminal, and my conviction was obtained in violation of the Constitution. Fortunately, I have been able to demonstrate that this conviction was unconstitutionally obtained and that I was convicted of an offense that was never made by the grand jury. In other words, the charging terms of the indictment were constructively amended without resubmission to the grand jury. This permitted me to be convicted on the basis of a charge not made by the grand jury and that was not, in fact, a criminal offense under the law. Fourth, I was also able to produce official government records to prove that I was the victim of the capricious acts of an overzealous and unscrupulous government agent. Finally, although I will be vindicated in this matter, I have nevertheless suffered the loss of my personal freedom, financial hardship, damage to my reputation, and the loss of years that I will never be able to recapture. One cannot win in a situation like this but can only hope that justice will be done. The real irony is that I have never

---

1. The 1978 federal conviction was an entirely separate and distinct occurrence and the failure to mention the 1978 federal conviction on the law school application is the false information that led to the denial of admission.

been charged with an offense where I had to prove my innocence rather than the prosecutor having to prove my guilt of the charges.

\*     \*     \*     \*     \*     \*

"[I]t is very awkward to have to explain a conviction for a criminal offense; even one that you know is going to be vacated. Innocence is not easy to explain and neither are the legal aspects of a criminal case. It is often difficult to explain the details of a case to members of your own family who believe in your innocence. Those individuals are known to waiver while awaiting your vindication through the judicial process. While one may owe many people an explanation of his situation, it is not always practical, or desirable, to attempt such an explanation. *Finally, one may avoid explaining a situation if he feels that such explanation will create more questions than it resolves or that it will somehow prove unduly prejudicial.*

\*     \*     \*     \*     \*     \*

"While some of my reasons may be subject to debate or even criticism, I did not want to be considered for admission to UW–Madison Law School either on the basis of an unjust conviction or because the conviction was soon to be vacated. *I did not want the Admissions Committee to base its admission decision on this conviction in any way.* The circumstances of this particular case were such that knowledge of it would have actually contributed very little to an informed admissions decision. While the Admissions Committee has the right to base its decision on the basis of all relevant information provided by the applicant or specifically requested by the Committee, *the applicant nevertheless has the ultimate responsibility of deciding what information he will provide the Committee with as a basis for official decision-making.* This does not mean that an applicant should deliberately seek to conceal relevant information, whether detrimental or not, but that he may, under certain conditions, consider a matter as not being ripe or appropriate

for the Admissions Committee's consideration or so highly prejudicial that it would unfairly affect that Committee's objective evaluation of the candidate. *The applicant may feel that he must withhold this information until it is ripe for discussion or may properly form the basis for official decision-making."* (emphasis added).

The defendants Thain, Helstad, and Thome responded to the plaintiff's July 22 correspondence in a letter dated August 4, 1981, which recites:

"Dear Mr. Martin:

"We regret to inform you that the LEOP Committee and the Admissions Committee have decided to revoke your admission to the University of Wisconsin Law School.

"This decision had been taken only after a full and careful consideration of your case by members of the LEOP Committee, the Admissions Committee and the Dean of the Law School. The consideration of your case has included a thorough review of your file and your letter of July 22, 1981, various conversations with Mrs. Cathy Tucker, Case Manager Unit-A, and Mr. Max Webb, Unit Manager of the Federal Correctional Institution at Milan, Michigan, and telephone conversations with a clerk at the 9th Circuit Court of Appeals for the U.S. Government, and with the U.S. Assistant Attorney in charge of your case, Mr. William Youngman.

"The review of all this record and information has convinced us that you failed to make a full and truthful disclosure of material information which was specifically requested and which is very relevant in making decisions for admission to the law school and to the bar. Thus item 6b, of the application form specifically asks the following question: 'Have you ever been convicted of, pled guilty or no contest to, or forfeited bail for any criminal conduct under law or ordinance, excluding only minor traffic violations?'

"In response to this question, you answered the following 'I am a former legal offender. I received a full pardon in 1971 from former Wisconsin Governor Patrick J. Lucey. This pardon is on file in the Secretary of State's Office.'

"You completely omitted the vital information that you were sentenced on February, 1978, at the U.S. District Court in Oregon, to a ten year sentence, after conviction for a bank-fraud scheme involving the inter-state transportation of unauthorized securities. This information only came to light after personnel from the Milan Correctional Institution and members of the U.S. Bureau of Prisons in Madison called this law school in order to coordinate your parole release with the orientation program for new students at this law school.

"Furthermore, your July 22 telephone conversation with Prof. Thorne and your letter of that same date failed to adequately explain this withholding of information and indeed failed to disclose additional information which was also very relevant to this case.

"In your telephone call you implied that your conviction was in the process of being vacated, at a hearing to be held on August 12, whereas the August 12 hearing at the Federal Court of Appeals for the 9th Circuit is the oral argument on a 2265 petition to vacate the sentence, to be argued before a three judge panel, and which is being strongly contested by the U.S. Government. A final decision on this petition will not be issued for at least six weeks.

"While you provided more complete information on this appeal in your letter of July 22, you failed to mention that your conviction had already been upheld on a prior direct appeal, and that now you are attacking it collaterally on much the same grounds that were already denied on the previous direct appeal.

"Finally, your phone call and letter did not provide an adequate explanation for your failure to disclose your conviction, as asked in the application form. Regardless of whether or not your conviction is ultimately overturned, the fact remains that at the time you submitted the application form you *were* serving a ten year sentence for a criminal conviction, and you did withhold this material and relevant information from us.

"After a thorough consideration of your case, and mindful of the serious effects this may have on your future life, we have decided that your failure to disclose the requested information constitutes sufficient grounds for revoking your admission to this law school. You will thus not be allowed to register for entrance to this law school."

Martin instituted this lawsuit to challenge the law school's decision to revoke his acceptance.

MISLEADING AND INCOMPLETE INFORMATION

For purposes of a procedural due process analysis, a property interest is defined as "a legitimate claim of entitlement" arising either by operation of state law or pursuant to a "mutually explicit understanding." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Although recognizing that state law gives the plaintiff no property interest in his possible future enrollment at the University of Wisconsin Law School, the majority "assumes" the existence of a property interest arising pursuant to a "mutually explicit understanding" between the plaintiff and the law school administration. Such an assumption defies logic because, as discussed more fully below, an acceptance to law school procured through false and misleading information gives rise to neither a "legitimate claim of entitlement" nor "a mutually explicit understanding."

Question 6(b) of the law school application requires an applicant to "fully explain" the circumstances surrounding any criminal conviction. This request for a full explanation imposed upon the plaintiff a duty to provide the law school with complete information, which the plaintiff breached by listing only the pardon received from the governor for a 1971 state conviction and totally

omitting any mention of his 1978 federal conviction of interstate transportation of forged securities. Nevertheless, the plaintiff takes the anomalous position that a constitutional right to a due process hearing arose even though he breached his duty to give full and complete information on his law school application. I find reasoning of this nature to be wholly lacking in reason and/or common sense. Martin failed to mention the most recent federal conviction because he said he believed "an Order vacating the judgment of conviction will be entered in this matter shortly after August 12, 1981." Second, he failed to inform the law school that the conviction had recently been affirmed on direct appeal and that the current proceedings involved only a collateral attack of the conviction. Nonetheless, the plaintiff decided that he would deliberately withhold information from the law school since "one may avoid explaining a situation if he feels that such an explanation will create more questions than it resolves or that it will somehow prove unduly prejudicial."

Martin's acceptance to the law school, procured through incomplete, false and misleading information does not constitute a "*legitimate* claim of entitlement", but rather an invalid claim founded on misrepresentation. Moreover, where an applicant gives false and misleading information on his application, as the plaintiff did, the resulting fraudulently induced acceptance to law school cannot be considered as "a mutually explicit understanding." In this case, the plaintiff's acceptance to the University of Wisconsin was not an "understanding" at all, but was rather a *mis*understanding premised upon false and misleading information; the law school's decision to accept the plaintiff was based on the plaintiff's intentional misrepresentation that he had no criminal convictions other than the state conviction for which he had been pardoned. "An individual's claim to be allowed to conceal information about himself—a criminal record, a history of bankruptcy, poor grades in college, a dishonorable discharge from the army, or whatever—is frequently nothing more than a claim to be allowed to manipulate other people's opinion of him and induce them to enter into transactions that they would refuse to enter into if they knew the truth." Posner, *The Uncertain Protection of Privacy by the Supreme Court,* 1979 SUP.CT.REV. 173, 175.

The Supreme Court in *Jago v. Van Curen,* 454 U.S. 14, 18, 102 S.Ct. 31, 34, 70 L.Ed.2d 13 (1981) stated: "Principles of contract law naturally serve as useful guides in determining whether or not a constitutionally protected property interest exists." It is a fundamental principle of contract law that a party who has been fraudulently induced to enter into a transaction may void that transaction. *United States v. 1,557.28 Acres of Land,* 486 F.2d 445 (10th Cir.1973); Restatement Contracts § 476. Since the law school administration was fraudulently induced to initially accept the plaintiff, it is clear that the administration was free to withdraw its offer of acceptance without affording the plaintiff a hearing, as the plaintiff acquired no constitutionally protected property interest in possible enrollment in the law school. Thus, any examination of the process afforded the plaintiff with regard to the law school's recision of his acceptance is superfluous, as no constitutionally protected property interest was created in the alleged acceptance procured through false and misleading information.

In summary, I would adopt the reasoning of Justice Blackmun's concurrence in *Jago v. Van Curen,* 454 U.S. 14, 23, 102 S.Ct. 31, 36, 70 L.Ed.2d 13 (1981) which states that "no mutual expectation" can exist where a claim of entitlement is based on "untruths." In the instant case, Martin "could not reasonably believe that there was a legitimate mutual understanding" that he would be allowed to enroll at the University of Wisconsin Law School. *Id.*

## A UNIVERSITY'S RIGHT TO CHOOSE ITS STUDENTS

This case presents a question not previously decided by the courts: Does a potential student enrollee, who has received a letter of acceptance from a particular uni-

versity, *but has not yet enrolled therein,* have, for purposes of a due process analysis, a constitutionally protected property interest in attending that university? Setting aside the question of fraud for a moment, I would hold that the interest of academic freedom includes the right of a university administration to determine who may be admitted to study as well as a right to determine and direct its faculty and student body. The freedoms of inquiry, research and thought, the life blood of academic freedom, are of vital importance to not only the university administration, but also to the faculty and student body, and, as discussed more fully below, preclude the existence of a property interest in this fact situation.

It is true that in recent years courts have increasingly intervened in school disciplinary situations involving major sanctions. *See, e.g., Soglin v. Kauffman,* 295 F.Supp. 978, 987 (W.D.Wis.1968). The facts in this case, as the majority points out, can be considered as analogous to an academic rather than a disciplinary dismissal. *Ante* at 391. In this area courts have always been, and continue to be, reluctant to intrude. *See Brookins v. Bonnell,* 362 F.Supp. 379, 382 (E.D.Penn.1973). It is my belief that the University of Wisconsin Law School and other academic institutions, *not* federal judges, are more qualified to make sensitive academic judgments as to their faculty's make-up as well as who should be admitted to study and upon what conditions they shall be admitted. If we were to impose the guiding hand of the federal judiciary into such decisions, we would diminish the vital precept of academic freedom to an oft-recited but empty cliche; one without meaning or substance. Basic academic decisions, such as the determination as to the make up of the faculty and who may be a student on the first day of classes, have long been regarded as among the essential prerogatives and freedoms of the university administration. Should we ever conclude otherwise, we would overstep our bounds into an area of academia in which we are ill-prepared to act and would ill-advisedly impinge upon the right of the administra-

tion to make fundamental and basic decisions as to the composition of their faculty and student body.

Justice Powell's plurality opinion in *University of California Regents v. Bakke,* 438 U.S. 265, 312, 98 S.Ct. 2733, 2759, 57 L.Ed.2d 750 (1978) quoted with approval Justice Frankfurter as follows:

" 'It is the business of a university to provide that atmosphere which is most conducive to speculation, experiment and creation. It is an atmosphere in which there prevail "the four essential freedoms" of a university—to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, *and who may be admitted to study.'* *Sweezy v. New Hampshire,* 354 U.S. 234, 263 [77 S.Ct. 1203, 1218, 1 L.Ed.2d 1311] (1957) (concurring in result)" (emphasis added).

Justice Powell went on to state that "Our Nation is deeply committed to safeguarding academic freedom which is of transcendent value to all of us and not merely to the teachers concerned." 438 U.S. at 312, 98 S.Ct. at 2759, quoting *Keyishian v. Board of Regents,* 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967). *See also* Note, *Academic Freedom,* 92 Harv.L.Rev. 879 (1979).

In an affidavit submitted to the district court, Dean Helstad described the important educational policy underlying question 6(b) of the law school application:

"5. The application for admission to the Law School requires disclosures of criminal convictions. This information serves the following educative goals:

"a. It is an aid in assessing potential fitness for admission to the practice of law.

"b. It aids in determining whether a student will relate harmoniously within the university community.

"c. Inasmuch as the continued success of the LEOP [a law school program for minority students] requires careful screening of applicants, it provides individual background information which, together with other infor-

mation, enables a more reliable prediction of success.

"6. Nevertheless, the Law School does not deny admission solely because of a prior criminal conviction. Except for the undisclosed 1978 conviction it appeared this plaintiff had been rehabilitated and his background would contribute to the Law School's interest in a diverse student body. And he was accepted.

"7. Truthful disclosures in the application are necessary for the Law School to select a high quality student body and to discharge its mission of preparing persons fit to practice law. Further, the truth is necessary if the Law School is to select the best for the LEOP. *Moreover, as a matter of educational policy, in forming the composition of the student body integrity and veracity are of fundamental importance.*" (emphasis added).

Truthfulness is particularly crucial in choosing law school students because, as future lawyers, it is essential to both American society and the legal profession that these persons have not only the mental dexterity necessary to practice law, but also moral values above reproach, including unquestioned integrity and veracity. As the Wisconsin Supreme Court in *State v. Cannon,* 206 Wis. 374, 240 N.W. 441, 455 (1932), recited: "One of the traits which we expect to find in a lawyer is that of accuracy of statement." Similarly, Justice Frankfurter eloquently described the unique role of the legal profession and the importance of an attorney's professional responsibility:

"Certainly since the time of Edward I, through all of the vicissitudes of seven centuries of Anglo-American history, the legal profession has played a role all its own. The bar has not enjoyed prerogatives; it has been entrusted with anxious responsibilities. One does not have to inhale the self-adulatory bombast of after-dinner speeches to affirm that all the interests of man that are comprised under the constitutional guarantees given to 'life, liberty and property' are in the professional keeping of lawyers. It is a fair characterization of the lawyer's responsibility in our society that he stands 'as a shield,' to quote Devlin, J., in defense of right and to ward off wrong. From a profession charged with such responsibilities there must be exacted those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as 'moral character.'"

*Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 247, 77 S.Ct. 752, 760, 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring).

This is not to say, of course, that law school officials have totally unfettered discretion in deciding who may be admitted to their law school. Universities cannot, for example, refuse to accept students solely because of race, color or creed nor can universities base their admissions decisions solely on racial or ethnic quotas. *University of California Regents v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). However, by finding that a person, who has been accepted at a university on the basis of false and misleading information but who has not formally enrolled or matriculated, has a constitutionally protected property interest in attending that university, a court impermissibly infringes on the university's right to choose its student body. The resulting intrusion into the university's affairs puts the court in the position of overseeing the university's admission procedures, a role for which federal judges are ill-equipped at best. "[T]he federal constitution does not authorize the courts to undertake the business of school or college admissions by dictating what considerations or methods of selection are to be given priority." *Bauza v. Morales Carrion,* 578 F.2d 447, 451 (1st Cir.1978).

The courts should not promote a legal doctrine which would subject colleges and universities to constant harassment in the courts by requiring these institutions to litigate decisions regarding the composition of their faculty and/or student body. We cannot foist such an unreasonable burden upon our schools without being fearful of the

irreparable harm that might be done to public and private education. Rather than merely assuming the existence of a property interest in this case, I would squarely address the underlying due process issue and hold that Martin had no constitutionally protected property interest in attending the University of Wisconsin Law School as (1) the law school's acceptance of the plaintiff was procured through incomplete, false and misleading information; and (2) in the interest of academic freedom, a mere potential student enrollee cannot be said to have a property interest in attending a particular university.