**Henry L. MARTIN, Plaintiff,**

v.

**Orrin L. HELSTAD, Gerald J. Thain, and Joseph R. Thome, Defendants.**

No. 81–C–566–C.

United States District Court, W.D. Wisconsin.

Nov. 23, 1983.

Henry L. Martin, pro se.

Jonathan P. Siner, Asst. Atty. Gen., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

On August 17, 1981, plaintiff filed a complaint alleging that defendants, acting under color of state law, violated plaintiff's constitutional rights under the due process and equal protection clauses of the Fourteenth Amendment. He based his claims on 42 U.S.C. § 1983. Initially, plaintiff sought declaratory and preliminary and permanent injunctive relief. In his amended complaint filed on August 24, 1981, plaintiff added requests for compensatory damages of $24,500 and punitive damages of $10,000.

On August 26, 1981, this court held a hearing on plaintiff's request for a preliminary injunction. I found that plaintiff had a property interest in his admission to the law school based on the law school's offer of admission and plaintiff's acceptance of that offer. However, I determined that plaintiff had received all the process he was due. Accordingly, I denied the request from the bench and on August 27, 1981, I entered an order denying the preliminary injunction. On appeal, the Court of Appeals for the Seventh Circuit affirmed the denial of the preliminary injunction. *Martin v. Helstad*, 699 F.2d 387 (7th Cir. 1983).

Defendants have moved for summary judgment on the remaining issues in the case. From the complaint, affidavits submitted by the parties, and documents in the record, I conclude that there is no genuine dispute with regard to the following facts.

## FACTS

In December 1980, plaintiff Henry Martin applied for admission to the University of Wisconsin Law School for the year commencing in August, 1981. His application was dated December 15, 1980.

On January 10, 1978, plaintiff was convicted in federal district court in Oregon of seven counts of aiding and abetting interstate transportation of forged securities in violation of 18 U.S.C. § 2314. *See United States v. Martin*, 587 F.2d 31 (9th Cir.1978) (per curiam), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979). On February 27 or 28, 1978, plaintiff was sentenced to ten years imprisonment. When he prepared and submitted his application for admission to the law school, plaintiff was confined in the Federal Correctional Institution at Milan, Michigan.

On his application for admission to law school, plaintiff listed an address in Milwaukee, Wisconsin as his present and permanent address. He did not provide an address or telephone number in Milan, Michigan. On a page of the application entitled "Record of Residence," plaintiff identified as a previous address from 1973 to 1980 a Milwaukee address and he identified a different Milwaukee address as both his permanent and present addresses since August 20, 1980. On the same page, plaintiff listed as his occupations or activities during the past two-year period two activities in Milwaukee, Wisconsin: Pap's Family Restaurant during 1978 and 1979 and General Educational Development Tutor during 1979 and 1980.

Plaintiff answered "yes" in response to question 6(b) of the application, which asks, "Have you ever been convicted of, pled guilty or no contest to, or forfeited bail for any criminal conduct under law or ordinance, excluding only minor traffic violations?" In addition to an affirmative response to question 6(b), question 6 requires that the applicant "fully explain the circumstances in the space below or attach a supplemental page." To this, plaintiff advised: "I am a former legal offender. I received a full Pardon in 1971 from Wisconsin Governor Patrick J. Lucey. This Pardon is on file in the Secretary of State's Office."

A "Caveat from the Dean" accompanied the application form advising that questions like number 6 on the application form would likely be asked in great detail of lawyers seeking admission to a state bar. In this regard, the dean advised: "You would be well advised to make full disclosure to us, so as to establish a record of openness about any past conduct, starting at least three years before bar admission is sought."

On his law school application and supporting documents, plaintiff supplied no other information about his 1978 conviction other than that quoted above in response to question 6.

By letter dated March 5, 1981, Arlen Christenson, Chairperson of the Admissions Committee, notified plaintiff that the Admissions Committee of the University of Wisconsin Law School had voted to accept plaintiff for the class scheduled to register in August 1981. In two letters also dated March 5, 1981, defendant Joseph R. Thome, Chairperson of the Legal Education Opportunities Program, informed plaintiff about financial assistance and about the Legal Education Opportunities Program. Subsequently, the law school sent a notice to plaintiff asking him, as an accepted applicant, to notify the law school of his intention to attend or to decline the invitation to attend the law school. Before April 10, 1981, plaintiff advised the Admissions Committee that he planned to attend the University of Wisconsin Law School.

In the March 5, 1981 acceptance letter, the Admissions Committee advised plaintiff that around April 1, 1981, they would ask accepted applicants to tell the law school if they would accept the offer of admission. The letter requested applicants deciding not to attend the University of Wisconsin Law School to notify the Admissions Committee promptly, stating, "We need your cooperation if we are to continue our present policy against requiring any deposit to hold a place in the class, and as a matter of fairness to other applicants whose chance to come here may depend on your decision."

In order to attend the law school, plaintiff had to obtain a community treatment center placement in Madison, Wisconsin for a six month period until March, 1982, when he was scheduled to be released from confinement. In June, 1981, the appropriate authorities approved the community treatment center placement for the plaintiff.

In May, 1981, plaintiff entered into a housing contract with the University of Wisconsin and he made a $50 advance deposit.

The Legal Education Opportunities Program planned an orientation for students admitted to the law school through the Legal Education Opportunities Program. The orientation was scheduled during the week of August 15 or 16 through 21 or 22, 1981. Plaintiff's case manager at FCI–Milan, Catherine Tucker, prepared a request for furlough to enable plaintiff to attend the orientation program. In conjunction with this furlough request, on July 21 or 22, 1981, Tucker telephoned the University of Wisconsin Law School to obtain information about the orientation schedule. On July 22, 1981, defendant Thome spoke with Tucker about the furlough request. This conversation provided defendant Thome and the other defendants with their first knowledge of plaintiff's 1978 conviction and incarceration. On July 22, 1981, defendant Thome requested additional information from Tucker regarding plaintiff's

incarceration and conviction. After obtaining a signed waiver from plaintiff, Tucker provided defendant Thome with the requested information.

Also on July 22, 1981, defendant Thome spoke with plaintiff on the telephone. In that conversation, defendant Thome advised plaintiff that there was a problem with his admission to the law school because of his response to question 6. Plaintiff informed defendant Thome that he did not provide more information about his 1978 conviction because that conviction was being appealed to the Court of Appeals for the Ninth Circuit and he expected the judgment to be vacated. Defendant Thome then requested plaintiff to write a letter explaining the circumstances of his 1978 conviction and incarceration.

In response, plaintiff wrote defendant Thome an eight-page letter dated July 22, 1981, in which he stated: "There are several reasons why I did not mention or detail my 1978 conviction." The primary reason detailed in the July 22, 1981 letter concerned plaintiff's belief that the conviction would soon be vacated.

> [T]he offense for which I was convicted was under appeal and is presently scheduled for hearing on August 12, 1981.... While it is generally considered improper, if not premature, to discuss the result in a criminal case prior to announcement of the court's formal decision, I believe that sufficient information is available to permit me to advise you that an Order vacating the judgment of conviction will be entered in this matter shortly after August 12, 1981.

Plaintiff continued by arguing the merits of the appeal and then discussed his belief that his conviction should not be considered in the admission decision: "[O]ne may avoid explaining a situation if he feels that such explanation will create more questions than it resolves or that it will somehow prove unduly prejudicial." Plaintiff elaborated on his right to withhold information from the Admissions Committee:

> I did not want to be considered for admission to UW–Madison Law School either on the basis of an unjust conviction or because the conviction was soon to be vacated. I did not want the Admissions Committee to base its admission decision on this conviction in any way. The circumstances of this particular case were such that knowledge of it would have actually contributed very little to an informed admissions decision. While the Admissions Committee has the right to base its decision on the basis of all relevant information provided by the applicant or specifically requested by the Committee, the applicant nevertheless has the ultimate responsibility of deciding what information he will provide the committee with as a basis for official decision-making. This does not mean that an applicant should deliberately seek to conceal relevant information, whether detrimental or not, but that he may, under certain conditions, consider a matter as not being ripe or appropriate for the Admissions Committee's consideration or so highly prejudicial that it would unfairly affect that Committee's objective evaluation of the candidate.... I seriously felt that the fact of my conviction for this particular offense was not a matter that should be considered by the Admissions Committee in reaching a decision about whether to admit me or not.... I do not believe that I would have provided the Admissions Committee with the facts of this conviction and my circumstances as a result of it even if I had been completely exonerated of the charges before I applied to Law School. A vacated judgment should not form the basis for official decision-making and in my view, neither should a judgment under attack; especially one that is likely to be overturned.

The letter continued to apologize for any inconvenience caused to the Admissions Committee and asked for "understanding of my reasons for not addressing this matter in my application." Plaintiff also indicated his willingness to discuss any aspect of his case with defendant Thome or any other member of the Admissions Committee.

By letter dated July 24, 1981, Admissions Committee Chairperson Christenson and defendant Thome advised plaintiff by letter of the decision of the Admissions Committee and the Legal Education Opportunities Program to reconsider plaintiff's admission to the law school. The letter read:

> Because of your failure to disclose material facts as requested in the admission application (item 6b.), the Admissions Committee and the LEOP Committee of the University of Wisconsin have decided to reconsider your admission to this Law School.
>
> Both committees have agreed that the decision to admit you to this Law School was conditioned on a full and truthful disclosure of all the information requested on the application form. Consequently, a lack of compliance with this condition can constitute a misrepresentation and grounds for rescinding the admission granted you.
>
> Before taking this step, however, we will review the materials you are now in the process of sending us. Of particular importance is a full explanation of your present conviction and incarceration and the reasons why you failed to disclose this information to us.

Plaintiff sent no materials to defendant other than his July 22, 1981 letter.

Defendant Thome contacted Max Webb, Unit Manager at FCI–Milan, who advised that plaintiff's conviction had not been vacated, and he talked again to Tucker, plaintiff's case manager at FCI–Milan. Both Webb and Tucker informed defendant Thome that in February, 1978, plaintiff had been sentenced to ten years imprisonment by an Oregon federal district court for interstate transportation of forged securities. Through contacts with the Assistant United States Attorney, the district court in Oregon and a clerk at the Court of Appeals for the Ninth Circuit, defendant Thome learned that plaintiff's conviction had been upheld on direct appeal and that the pending action was a collateral attack to vacate sentence under 28 U.S.C. § 2255. Defendant Thome was advised that, in the opinion of the United States Attorney, the collateral attack would likely fail.

By letter dated August 4, 1981, defendants Thain, Helstad, and Thome informed plaintiff that the Admissions Committee and the Legal Education Opportunities Program Committee had decided to revoke plaintiff's admission to the University of Wisconsin Law School. Defendants based their decision on a thorough review of plaintiff's file, plaintiff's July 22, 1981 letter, and various conversations with Tucker, Webb, a clerk of the Court of Appeals for the Ninth Circuit, and the Assistant United States Attorney in charge of the government's case regarding the pending collateral attack. The letter stated:

> The review of all this record and information has convinced us that you failed to make a full and truthful disclosure of material information which was specifically requested and which is very relevant in making decisions for admission to the law school and to the bar.

The letter continued to explain in detail why the information submitted by plaintiff was insufficient to support the failure to disclose the information on the application:

> You completely omitted the vital information that you were sentenced on February 1978, at the U.S. District Court in Oregon, to a ten year sentence, after conviction for a bank-fraud scheme involving the interstate transportation of unauthorized securities. This information only came to light after personnel from the Milan Correctional Institution and members of the U.S. Bureau of Prisons in Madison called this law school in order to coordinate your parole release with the orientation program for new students at this law school.
>
> Furthermore, your July 22 telephone conversation with Prof. Thome and your letter of that same date failed to adequately explain this withholding of information and indeed failed to disclose additional information which was also very relevant to this case.
>
> In your telephone call you implied that your conviction was in the process of

being vacated, at a hearing to be held on August 12, whereas the August 12 hearing at the Federal Court of Appeals for the 9th Circuit is the oral argument on a 2265 [sic] petition to vacate the sentence, to be argued before a three judge panel, and which is being strongly contested by the U.S. Government. A final decision on this petition will not be issued for at least six weeks.

While you provided more complete information on this appeal in your letter of July 22, you failed to mention that your conviction had already been upheld on a prior direct appeal, and that now you are attacking it collaterally on much the same grounds that were already denied on the previous direct appeal.

Finally, your phone call and letter did not provide an adequate explanation for your failure to disclose your conviction, as asked in the application form. Regardless of whether or not your conviction is ultimately overturned, the fact remains that at the time you submitted the application form, you *were* serving a ten year sentence for a criminal conviction, and you did withhold this material and relevant information from us.

After a thorough consideration of your case, and mindful of the serious effects this may have on your future life, we have decided that your failure to disclose the requested information constitutes sufficient grounds for revoking your admission to this law school. You will thus not be allowed to register for entrance to this law school.

On November 27, 1981, the Court of Appeals for the Ninth Circuit affirmed the district court's order and judgment dismissing plaintiff's § 2255 motion to vacate and set aside the 1978 sentence.

Plaintiff commenced law school at the University of California-Berkeley in August 1982. He is currently a second-year law student at that law school.

## OPINION

Before addressing the merits of the case, I will respond to plaintiff's contention that genuine issues of fact exist as to whether in fact he failed to disclose information about his 1978 conviction on the law school application. There is no dispute as to what information plaintiff included on his application and as to the underlying facts about his 1978 conviction. Although plaintiff disagrees with the inference drawn from the underlying facts and disclosures that he failed to respond truthfully and completely to question 6 on the application, a trial would not contribute to the information on which such a determination would be based. I conclude that the asserted dispute does not concern a question of material fact but rather, the conclusion of law to be drawn from the facts.

Moreover, I am convinced that, on the application for law school admission, plaintiff did not fully disclose the circumstances of his 1978 conviction as required by question 6. Furthermore, plaintiff's answer to question 6 and the information he gave regarding his activities over the past two years can reasonably be interpreted as intentional concealment of his incarcerated status. To the extent this point is relevant to a decision on this summary judgment motion, I conclude that no inference other than plaintiff's nondisclosure can be drawn from the undisputed facts.

Plaintiff places great emphasis on his alleged discussions with Bertrand Simpson, a member of the student advisory committee to the Legal Education Opportunities Program and the Admissions Committee, through which plaintiff asserts the defendants obtained constructive notice of plaintiff's conviction and incarceration.[1]

---

**1.** Plaintiff raised these allegations in a May 1, 1983 letter sent ex parte to this court. In my June 9, 1983 pretrial conference order, I advised the parties that I would consider this letter only if plaintiff properly served it on defendants. Eventually, plaintiff served a copy of this letter on defendants on July 13, 1983, the date defendants' motion for summary judgment and accompanying brief and materials were due. Defendants filed a motion to strike this letter to which plaintiff objects. In his materials opposing the motion to strike, plaintiff argues that the pre-

**1480**

Plaintiff avers that he spoke with Simpson between March 17 and 21, 1981 while plaintiff was in Milwaukee on a furlough from FCI–Milan. This conversation allegedly concerned financial aid and the likelihood of plaintiff's attending the University of Wisconsin Law School. Plaintiff states that he told Simpson that his attendance at the University of Wisconsin Law School was dependent upon his obtaining approval for a community treatment center placement in Madison, Wisconsin for a period of six months. Plaintiff argues that from this telephone conversation Simpson had information that plaintiff was incarcerated in FCI–Milan and, through Simpson, the defendants had constructive knowledge of plaintiff's conviction and incarceration. Plaintiff does not allege that Simpson communicated this information to defendants.

Defendants contend that because defendants cannot be liable under § 1983 under the principle of *respondeat superior*, they cannot be charged with constructive knowledge based on disclosures made to their agent if, indeed, Simpson was their agent. I find it unnecessary to decide whether defendants can be charged with such knowledge. If plaintiff actually advised Simpson of his conviction and incarceration, he did so after the defendants had made their decision to offer plaintiff admission, in reliance upon plaintiff's untruthful application. In fact, defendants had no actual notice of plaintiff's conviction and incarceration until July 22, 1981. At that time, defendants decided to reconsider plaintiff's admission because of his failure to disclose fully his 1978 conviction. Plaintiff has never alleged that defendants were negligent in failing to act on their constructive knowledge; the issue before the court is whether defendants afforded plaintiff sufficient procedural due process in revoking his admission in July and August, 1981.

Plaintiff's conversations with Simpson do not change the facts relevant to his nondisclosure on the application.

### A. Property Interest

In evaluating the procedural due process afforded plaintiff in the revocation of his admission to law school, the first question to be resolved is whether the law school's offer and the plaintiff's acceptance of that offer gave rise to a property interest under the Fourteenth Amendment. In the absence of such an interest, plaintiff had no right to procedural protections of any kind.

Courts and state law recognize a property interest in continuing education once a student has begun a course of study. *See Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Betts v. Board of Education*, 466 F.2d 629 (7th Cir.1972). *See also* Wis. Stats. § 36.05(11) (1981–82) (a "student" is a person who is registered for study in an academic institution). The issue in this case is whether, prior to matriculation, a successful applicant has a property interest in an accepted offer of admission to an academic program.

An applicant has no constitutional due process right to a hearing to prove his or her qualifications for admission and no constitutional right to admission. *Brookins v. Bonnell*, 362 F.Supp. 379, 383–84 (E.D.Pa.1973). However, courts have recognized a student's right to be heard when the student is threatened with dismissal for failure to meet the entrance requirements, after the student has completed a full semester of classes. *Id.* at 384. *Accord Hagopian v. Knowlton*, 470 F.2d 201, 209 (2d Cir.1972); *Dixon v. Alabama State*

---

trial conference order established no deadline for serving a copy of the letter on defendants. Plaintiff characterized the letter as an ex parte communication to the court discussing concerns and strategies. Moreover, plaintiff argues that rather than being prejudiced by the late receipt of the copy of the letter defendants were able to gain access to information without resort to

discovery. In response to these arguments, I note that this court does not give any consideration to ex parte communications of the sort intended by plaintiff. In the discussion above, I have disregarded the information provided in the May 1, 1983 letter and referred to the related facts contained in plaintiff's affidavit.

*Board of Education,* 294 F.2d 150, 157 (5th Cir.), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). In *Zitser v. Walsh,* 352 F.Supp. 438, 443 (D.Conn.1972), the district court determined that acceptance of an offer of admission into an Officer Candidate School created an interest entitled to some due process protection. In that case, the successful applicant had arrived to commence his studies. After he had submitted a written autobiography and participated in an interview, the student was dismissed on the ground that he did not possess the leadership abilities required of officer candidate students. The court held that the plaintiff's claim was sufficient to withstand a motion to dismiss for failure to state a claim upon which relief could be granted under the First and Fifth Amendments.

As the Court of Appeals for the Seventh Circuit noted in the opinion in this case affirming the denial of preliminary injunctive relief, property interests are created by existing rules or by mutually explicit understandings. *Martin v. Helstad,* 699 F.2d at 389–90, citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). In *Roth,* the Supreme Court recognized property interests created by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709. The Court held that a person who had a one-year appointment to a teaching position had a property interest in that employment created and defined by the limited terms of the appointment. *Id.* at 578, 92 S.Ct. at 2709. Similarly, in *Perry v. Sindermann,* the Court elaborated on the concept of a property interest as a broad range of interests secured by existing rules and understandings. The Court looked to both written and implied contract terms for the existence and extent of property interests. 408 U.S. at 601–02, 92 S.Ct. at 2699–700.

An offer of admission to a law school and the subsequent acceptance of that offer create a mutually explicit understanding that the accepted applicant will be admitted. The accepted applicant relies on the acceptance in forgoing offers from other law schools, in contracting for housing, and in making other preparations for attendance. For its part, the law school relies on the prospective student's acceptance in determining how many other offers of admission it may extend. Also, because admission to an accredited law school is the first step in acquiring the skills and credentials for a professional career in law, revocation of admission constitutes a deprivation to the individual involved.

In this case, the Court of Appeals for the Seventh Circuit expressed doubt about recognizing a property interest where any mutually explicit understanding exists only because it was procured through the applicant's fraud. *Martin v. Helstad,* 699 F.2d at 390, citing *Jago v. Van Curen,* 454 U.S. 14, 23, 102 S.Ct. 31, 36, 70 L.Ed.2d 13 (1981) (Blackmun, J. concurring) ("I could also hold that no mutual expectations existed under the circumstances inasmuch as the parole board's order was based on respondent's untruths....") However, the Court of Appeals recognized the inherent inconsistency in holding that a hearing need not be held when fraud in the application is the reason asserted for revocation of the offer of admission. The accuracy of the application is the fact in controversy. The determination whether a person has a sufficient property interest to require some procedural due process in the revocation of that interest should not turn on a pre-hearing determination of the fact that would be the reason for the hearing. If the law school is the sole determiner of whether an applicant lied on the application, the law school could revoke acceptances without a hearing using fraud as a pretext.

█ I find this result unacceptable. The law school should not be exempt from due process requirements in determining that an accepted admission should be rescinded

because the applicant lied on the application. While an accepted applicant has only a slight property interest in admission prior to matriculation, I conclude that there is a sufficient interest so as to require some procedural due process in the factual determination of nondisclosure when that determination is the basis for rescinding an acceptance.

## B. Procedural Due Process

 It is well established that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *accord Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). In *Mathews*, the Supreme Court identified three factors to be considered in determining the constitutional sufficiency of procedural due process in a given situation: 1) the private interest affected by the official action; 2) the risk of an erroneous deprivation of the interest through the procedure used and the probable value, if any, of additional procedural safeguards; and 3) the governmental interest including the function involved and the administrative and fiscal burdens of additional procedural safeguards. 424 U.S. at 335, 96 S.Ct. at 903. I will consider the first and third factors together.

### 1. Private and Governmental Interests

 The potential deprivation resulting from a particular decision is a factor in assessing the validity of an administrative decisionmaking process. *Mathews v. Eldridge*, 424 U.S. at 341, 96 S.Ct. at 906; *Goldberg v. Kelly*, 397 U.S. 254, 261–64, 90 S.Ct. 1011, 1016–18, 25 L.Ed.2d 287 (1970). In this case, it is plaintiff's admission to the University of Wisconsin Law School that is at stake. As I have concluded, admission to law school creates a property interest under the Fourteenth Amendment; however, the private interest in this case is diminished because of the governmental interest in academic freedom that is involved. In the prior appeal of this case, the Court

of Appeals for the Seventh Circuit concluded that "academic dismissals, as opposed to disciplinary dismissals, require no hearing at all." *Martin v. Helstad*, 699 F.2d at 391.

 Academic institutions are accorded great deference in their freedom to determine who may be admitted to study at the institution. *Regents of the University of California v. Bakke*, 438 U.S. 265, 312, 98 S.Ct. 2733, 2759, 57 L.Ed.2d 750 (1978) (Powell, J., plurality opinion); *Sweezy v. New Hampshire*, 354 U.S. 234, 263, 77 S.Ct. 1203, 1218, 1 L.Ed.2d 1311 (1957) (Frankfurter, J., concurring in result). *Accord* Friendly, Some Kind of Hearing, 123 U.Pa.L.Rev. 1267, 1305 (1975). As long as admission standards remain within constitutionally permissible parameters, it is exclusively within the province of higher educational institutions to establish criteria for admissions.

 In contrast to a disciplinary dismissal which focuses upon allegations of wrongdoing, an academic dismissal "requires an expert evaluation of cumulative information and is not readily adaptable to the procedural tools of judicial or administrative decisionmaking." *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. at 90, 98 S.Ct. at 955. In *Horowitz*, the university had determined that the plaintiff lacked the necessary clinical skills to perform adequately as a doctor. The Supreme Court held that a hearing was not constitutionally required if the decision was based on an evaluation of a student's academic performance. *See also Miller v. Hamline University School of Law*, 601 F.2d 970 (8th Cir.1979) (per curiam) (student dismissed from law school because of grade deficiencies was afforded sufficient due process by having an opportunity to respond in writing and to talk privately to admissions committee members).

 Because disciplinary dismissals resemble traditional judicial and administrative factfinding, a student facing dismissal from a public institution is entitled

to notice and a hearing permitting him or her to rebut the evidence of the allegedly wrongful conduct or to put it into context. *Goss v. Lopez*, 419 U.S. at 580, 583–84, 95 S.Ct. at 739, 740–41; *Soglin v. Kauffman*, 418 F.2d 163 (7th Cir.1969) (disciplinary proceedings).

 In deciding not to accept a student who gave misleading and incomplete information on his application, the Legal Education Opportunities Program and the Admissions Committee were acting well within the scope of their authority to determine the criteria for admission to the law school. *See Woodard v. Marsh*, 658 F.2d 989, 996 (5th Cir.1981), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982) (false response on application about existence of previous discharges from military service is relevant to leadership abilities and person's ability to serve as an officer). However, in deciding to revoke plaintiff's acceptance on the basis of an inaccurate application, the Legal Education Opportunities Program and the Admissions Committee had to determine that in fact plaintiff had failed to disclose complete and accurate information in response to the questions asked. I conclude that this determination is more akin to traditional judicial and administrative factfinding than it is to an academic dismissal decision. It is up to the law school to determine whether the fact of an applicant's nondisclosure justifies revocation of the applicant's admission, but the applicant is entitled to some minimal procedural due process to respond to allegations that he knowingly and willfully failed to disclose relevant information on the application.

The extent of that process will vary with the situation. *Morrissey v. Brewer*, 408 U.S. at 481, 92 S.Ct. at 2600. If, unlike this case, there is some dispute whether the information on the application form is truthful, the law school may have to provide the prospective student a hearing. If such a situation ever arises, it is only a slight burden upon the law school to provide the prospective student an opportunity to be heard on the truthfulness of his or her answers, either in writing as was done

here, or in person, at a hearing. Any burden upon the school does not outweigh the applicant's interest in an accurate determination of his or her truthfulness and veracity.

## 2. The Risk of Erroneous Deprivation

 In its decision affirming the denial of preliminary injunctive relief to plaintiff, the court of appeals noted that "deprivations of a property interest without opportunity for an oral personal exchange are generally disfavored." *Martin v. Helstad*, 699 F.2d at 391. Although in this instance plaintiff was not afforded an opportunity for an "oral personal exchange," I am persuaded that he received all of the process he was due.

First, as I have found, plaintiff had only a minimal property interest in his admission to the law school. In *Mathews*, the Supreme Court pointed out that "the degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process." *Mathews v. Eldridge*, 424 U.S. at 341, 96 S.Ct. at 906.

Second, the issue was sharply focused: whether plaintiff did or did not conceal relevant facts on his application. How the law school admissions and Legal Education Opportunities Committees should act on that information was not at issue; plaintiff had no right to be heard on the admission decision any more than he would have if he had given truthful answers to the questions on his application. In this respect, the determination is unlike that in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 or *Soglin v. Kauffman*, 418 F.2d 163, where students facing disciplinary dismissal were entitled to an opportunity not only to rebut the charges against them, but also to put their conduct into context.

Third, the Supreme Court has held that in assessing the validity of the procedures accorded a claimant, the court may consider "the fairness and reliability of the existing pretermination procedures and the

probable value, if any, of additional procedural safeguards." *Mathews v. Eldridge*, 424 U.S. at 343, 96 S.Ct. at 907. Keeping in mind that the inquiry concerned whether plaintiff failed to disclose truthfully and completely his 1978 conviction in response to question 6 on the application, I conclude that additional procedural safeguards would not have enhanced the fairness or reliability of the law school's determination.

At the time defendants learned directly that plaintiff was in fact incarcerated in federal prison for an offense other than the one for which he had been pardoned in 1971, defendants had before them the information that plaintiff disclosed on his application and in supporting documents. In addition, defendants had all subsequent correspondence from plaintiff regarding his application, offer of admission, and subsequent acceptance of that offer.

At no time, even in his July 22, 1981 letter, has plaintiff contended that he was not convicted of the offense charged or that he was not incarcerated at the time he applied to the law school. Similarly, plaintiff has never alleged that the application and supporting materials in his law school file are not true copies of those submitted by plaintiff.

Although the issue of plaintiff's disclosure appears to be "shading very close to the issue of the applicant's credibility and veracity," *Martin v. Helstad*, 699 F.2d at 391, the fact is that once plaintiff had admitted his 1978 conviction and his incarceration, the only issue before the law school committees was whether plaintiff's nondisclosure warranted rescission of his admission. A hearing on whether there was nondisclosure in fact would have contributed little if anything in this regard.[2] An assessment of plaintiff's credibility as a witness could not change the facts disclosed on the application. Although a factfinder could have been persuaded by plaintiff's demeanor that he believed that he disclosed requested information truthfully on the application, that his conviction was unjust, or even that he is not the sort of person who would intentionally conceal information, none of these are factors which the law school must consider in making its decision. It is up to defendants to determine whether the information disclosed on the application was sufficient to advise them of plaintiff's 1978 conviction and whether the disclosure comports with the sort of full and complete disclosure they expect of prospective lawyers.

Plaintiff had adequate notice and an ample opportunity to explain his prior nondisclosure.[3] Defendant Thome had advised plaintiff that defendants had learned of the 1978 conviction and had informed plaintiff that he should send a letter to defendant Thome explaining the circumstances of the conviction. In response, plaintiff submitted an eight-page letter primarily explaining why he withheld certain information on the law school application. Before they had received this letter from plaintiff, defendants wrote to advise him that incomplete and untruthful disclosure of information on the law school application constitute grounds for rescinding an admission and that defendants planned to take this action. Plaintiff could have submitted any addition-

---

2. Plaintiff argues that there is a factual dispute as to whether he omitted anything of relevance in his answer to Question 6. He argues that a person pardoned for an offense is no longer a former legal offender; thus, by saying, "I am a former legal offender" and "I received a full pardon," in his answer to Question 6, he was disclosing the fact of two prior convictions. As I noted earlier, there is no dispute about what plaintiff said on his application and no dispute about the fact that he has two prior convictions; the only dispute is over the inferences that are to be drawn from those facts.

3. The fact that defendants gave plaintiff an opportunity to explain *why* he failed to disclose the details of his previous conviction does not mean that they were constitutionally required to do so. His explanation for his nondisclosure had no relevance to their decision except as it bore upon the factual determination of the adequacy of his application as it would have if, for example, he had evidence to prove that he was not the Henry Martin convicted in Oregon or to show that he had not been incarcerated when he made out the application.

al information following his receipt of this letter, but he did not do so.

Although it could be argued that plaintiff should have had an opportunity to respond to the evidence obtained by defendants following their discovery of plaintiff's incarceration, the information so obtained is not of the kind and significance that warrants such an inquiry.[4] In large part, this information merely confirmed the information about which defendants had advised plaintiff. Had defendants provided plaintiff an opportunity to respond to the United States Attorney's prediction of plaintiff's success upon his collateral attack, defendants would have been in the position of hearing the merits of the collateral attack, a matter which was essentially irrelevant to the determination at hand: whether plaintiff failed to disclose truthfully and completely his 1978 conviction on his application for admission to law school.

Plaintiff had notice and an opportunity to explain his prior nondisclosure which he attempted to do. Nevertheless, defendants decided that nondisclosures of the magnitude involved in this case were grounds for denying an applicant admission to the law school. That decision is beyond the reviewing power of this court.

Under different circumstances, such as those in which the prospective student disputed the facts underlying the school's determination that the application was incomplete or untruthful, the school might be constitutionally required to provide a hearing at which the prospective student could appear in person. However, in the particular circumstances of this case, where the factual question was sharply focused and extremely narrow, and defendants had before them all the pertinent information, defendants were not required to provide plaintiff an opportunity to appear in person. Because I am convinced that the risk of an erroneous determination of the nondisclosure issue was negligible, and because additional procedural safeguards would contribute little in the way of increased fairness or reliability of the underlying determination, I conclude that the procedural due process afforded plaintiff in this case was constitutionally sufficient.

## ORDER

IT IS ORDERED that defendants' motion for summary judgment is GRANTED.

---

4. Once defendants learned that plaintiff was incarcerated following a conviction and sentence in 1978, they obtained from public records information about the offense for which plaintiff had been convicted and sentenced, and the information that the pending proceeding was a collateral attack, that plaintiff's conviction had been upheld on direct appeal, that plaintiff's conviction had not been vacated, and the date of the hearing in the pending matter. Since plaintiff has contended throughout this case that he cannot be accused of concealing that which is public record, he cannot be heard to complain about defendants' obtaining information from such public records or to contend that he should have been given a chance to rebut it.